**United States District Court**
For the Northern District of California

**** E-filed April 28, 2010 ****

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICHAEL G. OLSON,

        Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.
_____/

No. C09-01799 HRL

**ORDER (1) DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND (2) GRANTING
DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

**[Re: Docket Nos. 25, 27]**

      In this Social Security action, plaintiff Michael Olson appeals the determination of the date of onset of his total disability. The matter is now before the court on cross-motions for summary judgment. Upon review of the moving and responding papers, the court DENIES plaintiff's Motion for Summary Judgment and GRANTS defendant's Cross-Motion for Summary Judgment.[1]

**BACKGROUND**

      Olson was born in 1963 and has a high school education. He has worked as a cook, construction worker, and hod carrier. Olson alleges that on April 24, 2002, he injured his back when he bent over to plug in an electrical cord while at work. On March 8, 2006, Olson filed an application for disability and supplemental security income, claiming April 24, 2002 as the onset date of his disability. His application was denied initially and again upon reconsideration. (AR 78–81, 86–91.)

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

<div style="writing-mode: vertical"><strong>United States District Court</strong><br>For the Northern District of California</div>

1      The Administrative Law Judge ("ALJ") heard plaintiff's matter on August 27, 2008.  The

2  ALJ concluded that Olson was disabled, but determined that the severity of Olson's back disorder

3  did not meet the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix

4  1 until March 14, 2007.  Prior to that date, the ALJ found that Olson had the residual functional

5  capacity to perform a full range of sedentary work in jobs that existed in significant numbers in the

6  national economy.  (AR 20–22.)

7      On February 24, 2009, the Appeals Council denied Olson's request for review, and the

8  ALJ's decision became the final decision of the Commissioner.  (AR 1–3.)  Olson now seeks

9  judicial review of the final decision.

10  <div align="center"><strong>LEGAL STANDARD</strong></div>

11      Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's

12  decision denying benefits.  The court will uphold the ALJ's determination if the findings of fact are

13  supported by substantial evidence, 42 U.S.C. § 405(g), and if the ALJ applied the proper legal

14  standards, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Orn v. Astrue*,

15  495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence" means more than a scintilla, but less than

16  a preponderance: evidence that a reasonable person might accept as adequate to support a

17  conclusion.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The reviewing court must look

18  at the record as a whole and not just the evidence that supports a finding.  *Drouin v. Sullivan*, 966

19  F.2d 1255, 1257 (9th Cir. 1992); *see also Orn*, 495 F.3d at 630.  The court "must uphold the ALJ's

20  decision where the evidence is susceptible to more than one rational interpretation."  *Magallanes v.*

21  *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

22  <div align="center"><strong>DISCUSSION</strong></div>

23      Olson's sole issue on appeal is that his evidence argued for a date of onset of disability of

24  April 24, 2002[2] and that substantial evidence does not support the ALJ's conclusion that onset was

25  as of March 14, 2007.  (Compl. 2.)  First, he submits that his medical records support an earlier

26  onset date and that the ALJ erred in finding that he did not meet or equal a listed impairment prior to

27  March 14, 2007.  Second, Olson alleges that the ALJ erred by discounting the opinion of his treating

28

---

[2] Plainiff's motion papers occasionally refer to the alleged onset date as April 22, 2002.  A review of the record shows that such references are the result of a typographical error.

**United States District Court**
For the Northern District of California

1    physicians.  Finally, plaintiff contends that the ALJ failed to consider Olson's subjective pain

2    testimony.  (Pl. Mot. 13; Reply 2.)  Defendant argues that the ALJ's findings are supported by

3    substantial evidence in the record and are free of legal error.

4    **A.      Medical Evidence in Support of the Onset Date**

5            Plaintiff argues that substantial evidence does not support the ALJ's finding that his

6    impairment was not severe prior to March 14, 2007.  (Pl. Mot. 1.)  He asserts that the ALJ erred by

7    establishing that date—the date Olson received a diagnostic discography—as the onset date.  (Pl.

8    Mot. 8.)  Plaintiff identifies evidence he claims supports that he was suffering from a disability

9    much earlier.  In particular, Olson points to doctors' reports finding that he was temporarily and

10   totally disabled as early as June 24, 2003.  (Reply 2.)

11           The Social Security Act defines a disability as the "inability to engage in any substantial

12   gainful activity by reason of any medically determinable physical or mental impairment which . . .

13   has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

14   § 423(d)(1)(A).  In determining whether a claimant is disabled, the ALJ uses a five-step process.  20

15   C.F.R. § 404.1520.

16           Social Security Ruling 83-20 defines the onset date of disability as "the first day an

17   individual is disabled as defined in the Act and the regulations."  SSR 83-20, 1983 WL 31249, at 1.

18   If a case involves slowly progressive impairments, the onset date is "the date when it is most

19   reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the

20   individual from engaging in [substantial gainful activity] (or gainful activity) for a continuous

21   period of at least 12 months or result in death."  SSR 83-20 at 3; *see Armstrong v. Comm'r*, 160

22   F.3d 587, 590 (9th Cir. 1998) (stating that the onset date is determined by the date when the

23   impairment became disabling, rather than the date when it became present).  If the onset date is not

24   definite from the medical evidence, then the ALJ must consult a medical expert for assistance in

25   deducing an onset date.  SSR 83-20; *see also DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir.

26   1991).  However, the ALJ must fix the onset date based on the facts and the date can never be

27   inconsistent with the medical evidence of record.  *Armstrong*, 160 F.3d 587, 589.

28   ///

**United States District Court**
For the Northern District of California

1    In this case, the record shows that doctors diagnosed Olson with acute lower back pain and

2    lumbosacral strain with movement and facet syndrome on May 1, 2002. (AR 209, 211.) On May 8,

3    2002, Dr. Joseph Debonis cleared Olson to return to modified work, but Olson did not do so. (AR

4    42, 214.) Then, on June 24, 2002, Dr. Fulton Chen found Olson to be temporarily and totally

5    disabled, but not permanent and stationary, pursuant to an examination for workers' compensation

6    benefits. (AR 231.) A few days later, Dr. Chen referred Olson to obtain an MRI. The MRI showed

7    multilevel degenerative changes in the lumbar region, a possible impingement of the left L5 nerve

8    root with some disc bulging, and a right paracentral disc protrusion at the L5–S1 level. (AR 219–

9    20.) Dr. Chen treated Olson with epidural shots, which alleviated some of his pain. (AR 240.)

10    In October 2002, Olson was incarcerated for several months. (AR 221, 227, 282.) In June

11    2003, after Olson was out of custody, Dr. Chen examined him twice. Olson complained that his

12    back pain had increased while in prison due to the hard concrete surfaces. Dr. Chen diagnosed him

13    with lumbar disc disease at L5–S1 and provided him with a permanent and stationary assessment.

14    (AR 223–28.) Dr. Chen noted that Olson was not interested in surgery at that time. (AR 228, 342.)

15    From July 2003 to November 2005, Olson was incarcerated again. (AR 51.) In May 2004,

16    he slipped and fell, which he said resulted in a worsening of his back pain. (AR 342, 346.) He

17    received another MRI on August 10, 2004 that supported the earlier degenerative disc diagnosis and

18    joint disease indicating involvement of L4–L5 and L5–S1, but the MRI showed no evidence of

19    spinal stenosis. (AR 248.)

20    On December 12, 2005, Olson was treated by Dr. John Lettice. Olson complained to Dr.

21    Lettice that his back pain was getting progressively worse. (AR 354.) However, it was not until

22    March 14, 2007 that Dr. Conor O'Neill conducted a diagnostic discography examination that

23    showed disruption of the intervertebral disc at L5–S1 with underlying discogenic spine pain. (AR

24    406.) On May 2, 2007, Olson received a third MRI that found very mild central stenosis at L3–L4

25    and a bulge at L5–S1 that "barely" contacted the S1 nerve root. (AR 19, 433, 435–38.) In July

26    2007, Olson finally underwent back surgery, which relieved some of his symptoms. (AR 45, 420.)

27    The record before the court shows that in finding March 14, 2007 as the onset date of

28    Olson's disability, the ALJ carefully considered Olson's allegations, made a detailed and thorough

4

**United States District Court**
For the Northern District of California

1   written summary of the facts of this case, consulted a medical expert, and explained his factual

2   conclusions from the evidence.  Even though some of Olson's physicians concluded that he was

3   disabled in the context of workers' compensation evaluations as early as April 24, 2002, the ALJ

4   found sufficient contrary evidence in the record to conclude that Olson was not disabled until March

5   2007.  (AR 21.)  For example, the ALJ considered (1) Olson's inconsistent leg raising tests; (2) the

6   examining physician Dr. Ravi Nayak's clinical observation that Olson's significant pain behavior

7   appeared to be exaggerated; (3) the fact that there had been no diagnosis of spinal arachnoiditis

8   during the earlier time period; (4) the results of the diagnostic discography; and (5) the opinion of

9   the medical expert, Dr. William Temple.  (AR 20.)  Based on this review, the ALJ found that

10  Olson's back injury progressively worsened to a point of disability as of March 17, 2007, which the

11  diagnostic discography sufficiently supported.  (AR 23.)

12      Nevertheless, Olson argues that the ALJ failed to consider his August 10, 2004 MRI in

13  determining the onset date of disability.  A degenerative disc disease that results in compromise of a

14  nerve root or the spinal cord in the lower back qualifies as a disability if there is (1) additional

15  evidence of nerve root compression with sensory or reflex loss and positive straight-leg raising tests;

16  (2) spinal arachnoiditis confirmed by biopsy or appropriate medically acceptable imaging; or (3)

17  lumbar spinal stenosis resulting in pseudoclaudication.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

18  Olson asserts that the August 2004 MRI qualifies as an appropriate medically acceptable imaging to

19  meet the listing requirements because it resulted in a diagnosis of degenerative disc and joint disease

20  and indicated involvement of L4–L5 and L5–S1.  (AR 267.)

21      Yet the record shows that the ALJ did consider the August 10, 2004 MRI results in

22  determining the onset date.  (AR 20.)  Although neither party relies on the June 2002 MRI to

23  determine a finding of disability, that MRI showed a degenerative disc with a possible impingement

24  of the left L5 nerve root and also a diffuse bulging of the intervertebral disc.  (AR 219.)  Dr. Lettice

25  later reviewed both the 2002 and 2004 MRI results and commented that the findings from the 2004

26  MRI did not indicate a significant change from the 2002 MRI.  (AR 397.)  Even more, the 2004

27  MRI findings lacked any indication of nerve root impingement at the L4–L5 level; the physician

28  who wrote the MRI report, Dr. Mario Deguchi, specifically stated that the 2004 MRI showed no

United States District Court
For the Northern District of California

1   evidence of spinal stenosis.  (AR 248.)  Dr. Nayak also reviewed the 2004 MRI and noted that,

2   although it showed progression of the L5–S1 disc herniation, Olson did not have radicular

3   complaints suggesting a herniated intervertebral disc; rather, his complaints appeared to be due to

4   degenerative disc disease.  (AR 366.)

5          Moreover, treatment notes from Olson's physicians do not sufficiently establish the

6   existence of L5 nerve root symptoms, nor do they show that he suffered from all physical limitations

7   related to the spine as required under Listing 1.04 for the time period on or before March 14, 2007.

8   As Dr. Temple pointed out during the hearing, nearly all of Olson's pre-surgery examinations

9   indicated normal neurological function.  (AR 55.)  There is no conclusive medical evidence in the

10  record to show that on or before March 14, 2007, Olson experienced difficulty with straight leg

11  raising, limitations on range of motion, diminution in muscle strength, spasms, or leg radiculitis.

12         Plus, although the 2002 MRI showed "a possible impingement of the left L5 nerve root," the

13  2004 MRIs presented no evidence of nerve root compression.  (AR 219, 248.)  Nor did the

14  discogram on March 14, 2007 indicate nerve compression.  (AR 406.)  Additionally, the record

15  shows that while the results of some objective clinical tests suggest approximation of nerve

16  compression after March 14, 2007, they do not confirm that Olson's spinal impairment resulted in

17  compromise of a nerve root prior to March 14, 2007.  Indeed, there is no evidence of spinal

18  arachnoiditis or stenosis in the medical record prior to March 28, 2007.  Plaintiff cannot cite any

19  evidence of an operative note, pathology report, or appropriate medically acceptable imaging that

20  confirms his disability was severe under Listing 1.04 in April 2002.  In conclusion, the ALJ's

21  determination that March 14, 2007 was the onset date of Olson's disability is supported by

22  substantial evidence.

23  **B.     Treating Physicians' Opinions**

24         Olson also argues that the ALJ erred when he gave more weight to the opinions of

25  examining physician Dr. Nayak and non-examining physician Dr. Temple than he did to the

26  opinions of treating physicians Drs. Chen and Lettice.  (Reply 2.)

27         A determination of whether or not a claimant meets the statutory definition of disability is a

28  legal conclusion reserved to the ALJ, and the opinion of a medical source on the ultimate issue of

1   disability is not conclusive.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  That said, the

2   opinion of a treating physician usually is given deference.  *Id.*  However, an "ALJ may reject the

3   opinion of a treating physician in favor of a conflicting opinion of an examining physician if the

4   ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on

5   substantial evidence in the record.' "  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)

6   (quoting *Magallanes*, 881 F.2d at 751).  Indeed, the ALJ may reject opinions of treating physicians

7   where those opinions are inadequately supported by clinical findings.  *Bayliss v. Barnhart*, 427 F.3d

8   1211, 1217 (9th Cir. 2005).

9       In addition, a doctor's finding that a claimant is "disabled" or "unable to work" does not

10  determine disability for present purposes.  *See* 20 C.F.R. §§ 416.927(a)(2); 416.927(e)(1).  As a

11  result, although the ALJ must give weight to medical opinions discussing the "nature and severity of

12  [the claimant's] impairments," he does not have to give weight to a physician's opinion regarding a

13  claimant's disability or employability.  *Hadnot v. Astrue*, No. 07-5504, 2008 LEXIS 98359 (N.D.

14  Cal. Nov. 25, 2008), *aff'd*, No. 09-15189 (9th Cir. Mar. 25, 2010).

15      The ALJ discounted Dr. Chen's opinions because they are stated in terms relevant to

16  assessing workers' compensation claims and not disability as defined for Social Security purposes.

17  (AR 21, 60); *see Fountain v. Astrue*, No. C 07-05169, 2008 LEXIS 108460 (N.D. Cal. Oct. 15,

18  2008).  Although an ALJ may not ignore a doctor's medical opinion merely because it was issued in

19  a workers' compensation context, he may consider the  pertinent distinctions between the two

20  regimens.  *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  When

21  evaluating Dr. Chen's opinion, the ALJ did rely on the detailed findings and diagnoses of a back

22  disorder in the medical record, but properly took into consideration the language of the of workers'

23  compensation assessments.  (AR 21–22, 65–68.)

24      The ALJ also discounted Dr. Chen's opinion because his permanent and stationary

25  conclusion is contradictory to and inconsistent with the medical record.  (AR 21.)  In June 2002, Dr.

26  Chen opined that Olson was "temporarily totally disabled."  (AR 233.)  Dr. Chen based his

27  diagnosis of a herniated disc on "the extreme heavy nature of Mr. Olson's customary duties."  (AR

28  233.)  Yet Dr. Chen also noted in a workers' compensation evaluation that Olson tolerated the sixty-

1    minute exam without complaint.  (AR 244.)  In addition, following an epidural procedure in July

2    2002, Dr. Chen cleared Olson to return to work in six weeks.  (AR 242.)  And on June 10, 2003, Dr.

3    Chen recommended that Olson participate in a gym program as well as vocational rehabilitation "as

4    soon as possible to move forward with his career."  (AR 228.)  Even so, later that same month, Dr.

5    Chen gave Olson a permanent and stationary assessment.[3]  Dr. Chen reported that "due to the static

6    nature of his symptoms, permanent and stationary status would be indicated."  (AR 224.)

7              After Olson was released from prison in December 2005, Dr. Lettice found Olson

8    temporarily and totally disabled.[4]  Dr. Lettice said he believed Olson had been disabled ever since

9    the accident occurred in April 2002.  (AR 404.)  He also noted that Olson had a loss of functional

10   capacity to sit, stand, or ambulate any considerable distance, and further reported that Olson's

11   functional capacity to lift or bend forward was compromised.  (AR 17, 333.)  Then, in June 2007,

12   Dr. Lettice diagnosed Olson with progressively disabling lumbosacral spine pain secondary to

13   intrinsic injury to the intervertebral disk at L5–S1, with associated acquired spinal stenosis and

14   radiculopathy involving the right lower extremity.  (AR 17, 399.)  Dr. Lettice stated at that time that

15   Olson continued to be "temporarily and totally disabled from his employment."  (AR 401.)

16             Nevertheless, the ALJ discounted Dr. Lettice's opinions prior to March 14, 2007 because he

17   found they were inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(d)(5),

18   416.927(d)(5) (the more consistent an opinion is with the record as a whole, the more weight it will

19   be given).  The ALJ specifically discounted Dr. Lettice's opinions that did not have the benefit of

20   Olson's discography results or Dr. O'Neill's opinions, noting that they were inadequately supported

21   by clinical findings.  (AR 23–24.)  The ALJ also cited Olson's inconsistent leg raising tests and the

22   contradictory reports of Olson's abilities.  (AR 23.)  For example, the disability determination

23   services consultative examiner, Dr. B. J. Ginsburg, found that in November 2006 Olson could:

---

24   [3] The medical record further suggests that Dr. Chen was merely restating the conclusions of

25   previous workers' compensation reports.  (AR 221, 224.)  The first mention in the record of a
     permanent and stationary finding is in an October 2002 consultation with a Dr. Via indicating that

26   Olson "apparently has [already] been given permanent restrictions."  (AR 221.)  In June 2003, Dr.
     Chen reported, "it is my understanding that Mr. Olson was treated by Dr. Via . . . and a permanent

27   and stationary report was produced.  Nonetheless, I have been asked to produce another permanent
     and stationary report for Mr. Olson."  (AR 224.)

28   [4] Dr. Lettice's pre-March 14, 2007 opinions cite to Dr. Chen's June 2003 permanent and stationary
     report for support—an opinion that the ALJ also discounted.  (AR 333–36, 395–98, 402–04.)

1   frequently lift ten pounds (and occasionally twenty); stand and walk about six hours; sit about six

2   hours; and occasionally stoop, kneel, crouch, or crawl.  (AR 379–83, 393–94.)

3        The ALJ considered and discussed Drs. Chen's and Lettice's treatment notes, but concluded

4   that they were entitled to less weight because they were not based on Social Security standards and

5   relied on insufficient medical evidence.  (AR 19–23.)   Further, Dr. Lettice did not see Olson before

6   2005, and thus the ALJ permissibly questioned the weight of his opinion that reached back to 2002.

7   (AR 23.)  *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (noting that a treating

8   physician, who had no personal knowledge of the claimant's condition before the time of alleged

9   onset, was "scarcely different from any non-treating physician with respect to that time period").

10        On the other hand, the ALJ found that the opinions of Drs. Nayak and Temple were more

11   consistent with the record as whole and he specifically addressed relevant issues in his written

12   decision.  Dr. Nayak examined Olson in May 2006 and issued opinions in August and October of

13   2006 on Dr. Lettice's findings.  (AR 341–47, 361–67, 359–60, 357–58.)  Dr. Nayak expressed

14   doubts about Dr. Lettices's opinion that Olson was temporarily and totally disabled, though agreed

15   that there had been a progressively decreasing range of motion in Olson's lumbar spine.  (AR 357–

16   60.)  However, Dr. Nayak attributed Olson's cumulative trauma to work activities and the injury at

17   the prison.[5]  (AR 357.)

18        Furthermore, given the inconsistent medical examinations and deficient evidence, the ALJ

19   complied with SSR 83-20 by relying on the opinion of a medical expert, Dr. Temple, to aid in

20   determining the onset date.  At the hearing, Dr. Temple noted that the examining physicians

21   consistently found a decrease in Olson's range of motion.  (AR 20, 54–57.)  But Dr. Temple also

22   found that the overwhelming evidence showed that Olson had normal motor and sensory functions

23   despite findings of weakness in his right leg.  (AR 55.)

24        Consequently, the court concludes that the ALJ provided sufficiently specific reasons, based

25   on substantial evidence in the record, to discount the opinions of Olson's treating physicians.

26

27   [5] Dr. Lettice's opinion is that the 2004 prison injury was incidental and unrelated to Olson's
symptom complex.  (AR 404.)  Dr. Nayak's finding is consistent with Dr. Fred Blackwell's
28   examination in July 2006, which considers Olson's prison injury an aggravation of his April 2002
injury.  (AR 348–56.)

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**C.      Subjective Pain Testimony**

Lastly, Olson argues that the ALJ rejected his pain and symptom testimony without providing clear and convincing reasons for doing so.  He complains that Dr. Temple, the medical expert, did not consider his subjective complaints in assessing his residual functional capacity, even though Dr. Temple confirmed that his complaints were reasonable.  (Reply 2.)  Olson contends that his subjective complaints are objective medical evidence of an underlying impairment that could reasonably give rise to a date of onset prior to March 14, 2007.

To determine whether a claimant's testimony regarding subjective pain is credible, an ALJ must engage in a two-step analysis.  First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  In so doing, the ALJ must specify what testimony is not credible and what evidence undermines the claimant's complaints.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (providing factors to consider when making a credibility determination).  However, a court will not "reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

At the administrative hearing, Olson testified that he could not walk down the street with a bag of groceries or carry a jug of water without pain radiating down to his buttocks.  (AR 45.)  He claimed that his pre-surgery back pain was equivalent to his post-surgery discomfort "except for the pain shooting down his leg."  (AR 45.)  He stated that he could sit comfortably for fifteen to twenty minutes, do his laundry once a week, keep his room clean, and walk up to two miles.  Even so, Olson testified that he has bad days where he just has to lie down and that he can work for only one or two days at a time.  (AR 44.)  In addition, in 2007 Olson reported on a SSA Form 3441 that he could not stand or sit for even thirty minutes, that it hurt to bend over, and that his back had "gone out" many times.  (AR 21, 190.)

United States District Court
For the Northern District of California

1    In reviewing Olson's testimony, the ALJ first found that Olson's medical impairments

2  reasonably could be expected to produce his alleged symptoms.  (AR 21.)  The ALJ then determined

3  that Olson's reported pain was supported after March 17, 2007 by objective medical evidence such

4  as the anesthetic discography  and also by Dr. O'Neill's opinion that Olson had a disrupted

5  intervertebral disk at the L5–S1 level with underlying discogenic spine pain.  (AR 23, 406.)

6  However, the ALJ found specific evidence from Olson's treating and examining physicians that

7  contradicted his prior pain testimony, such as inconsistent leg raising tests, residual functional

8  capacity assessments, and a MRI report only noting the possibility of nerve root involvement.  (AR

9  21–22, 23, 55–56, 220–23, 344, 364, 393.)

10    The record shows that the ALJ did rely on Olson's subjective pain testimony to the extent it

11  was consistent with the objective medical evidence.  (AR 21.)  However, the ALJ found that prior to

12  March 2007, Olson's statements about the intensity, persistence, and functionally limiting effects of

13  his pain were not consistent with the evidence of his residual functional capacity.  (AR 21.)  In

14  particular, the ALJ determined that Olson's testimony that he could only work two days before

15  needing to take a day off was inconsistent with the opinion of the medical expert. Dr. Temple.  (AR

16  21.)  Dr. Temple concluded that objective medical evidence showed that Olson had the residual

17  functional capacity to do work prior to his surgery in 2007.  (AR 59.)  He opined that from

18  November 2005 until July 2007, Olson could have lifted up to ten pounds occasionally with no

19  limitation on standing or walking and was able to work five days a week.  (AR 20, 59.)  Dr.

20  Temple's opinion is consistent with a November 2006 disability examination where Dr. Ginsburg

21  determined that Olson had light residual functional capacity with postural limitations.  (AR 394.)

22    The ALJ also relied on Dr. Nayak's reports finding indications of symptom exaggeration.

23  Dr. Nayak observed that Olson demonstrated significant pain behavior even though his neurological

24  examination was otherwise unremarkable.  (AR 20.)  Dr. Nayak's notes indicate that Olson's

25  complaints did not appear to correlate with the MRI findings.  (AR 20, 341–47, 357–67.)  Dr. Nayak

26  also observed that Olson was able to sit through an hour-long interview in May 2006 with no signs

27  of discomfort.  (AR 17.)  The ALJ's reliance on Dr. Nayak's report was substantially justified

28  ///

11

1    because that report questions the severity of Olson's symptoms before March 2007.  *Hardisty v.*

2    *Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010).

3            Finally, the ALJ considered Olson's ability to engage in activities of daily living when

4    evaluating his credibility.  (AR 16, 19–21.)  A claimant's daily activities may be used as evidence in

5    finding that his testimony is not credible.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

6    Olson's ability to engage in activities of daily living to the extent that he spends a substantial part of

7    the day performing physical functions that are transferable to a work setting is relevant; a specific

8    finding as to this fact may be sufficient to discredit his allegations.  *See Morgan v. Comm'r of Soc.*

9    *Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

10           Thus, the ALJ's determination of Olson's credibility is supported by specific findings and

11   substantial evidence that Olson's statements about his symptoms were not wholly credible.  The

12   ALJ reviewed the record as a whole and did not arbitrarily discredit Olson's testimony.  Therefore,

13   the ALJ's ruling is supported by substantial evidence in the record.

**CONCLUSION**

15           Based on the foregoing, plaintiff's motion for summary judgment is DENIED and

16   defendant's cross-motion for summary judgment is GRANTED.  Judgment shall be entered for the

17   defendant.

18           **IT IS SO ORDERED.**

19   Dated: April 28, 2010

20                                                    _____
                                                     HOWARD R. LLOYD
21                                                   UNITED STATES MAGISTRATE JUDGE

*United States District Court*
For the Northern District of California

12

1

**C09-01799 HRL** N**otice will be electronically mailed to:**

2

Harvey Peter Sackett          hps@hpspc.com, juanita@sackettlaw.com,
                              julie@sackettlaw.com, lucyc@sackettlaw.com

3

4

Jacob Micah Mikow            jacob.mikow@ssa.gov

5

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

13